UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| RUBEN LUNA,<br>JUAN GONZALEZ,<br>RICHARD LOPEZ, and<br>CLARO MARTINEZ, JR.,<br>**Plaintiffs**<br><br>v.<br><br>SOUTHWEST RESEARCH<br>INSTITUTE<br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Case No. 5:14-CV-00097-RCL** |

## MEMORANDUM OPINION

Before the Court are defendant's motion for summary judgment, ECF No. 53, and defendant's motion to strike portions of plaintiffs' declarations in support of plaintiffs' response to defendant's motion for summary judgment, ECF No. 62. After due consideration, defendant's motion to strike and objections to plaintiffs' summary judgment evidence is **DENIED** while the Court overrules and sustains defendant's objections as appropriate with regard to plaintiffs' summary judgment evidence, and defendant's motion for summary judgment is **GRANTED**.

### I. BACKGROUND

#### A. Plaintiffs

Plaintiffs in this action are four individuals of Hispanic descent, Ruben Luna, Juan Gonzalez, Richard Lopez, and Claro Martinez, Jr., who are employed in the machine shop at Southwest Research Institute ("Southwest Research"). They seek relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 *et seq.*, the Civil Rights Act of 1866, as

1

amended, 42 U.S.C. § 1981, and the Texas Labor Code §§ 21.001 *et seq.* for discriminatory employment practices.

### 1. *Ruben Luna*

Luna began working at Southwest Research in 2005 as a Machinist B in the machine shop. Luna was promoted to the Principal Machinist position in 2006, and in September 2013, he was again promoted, this time to the Machinist A position—a position he remains in today. Since beginning his employment, Luna has consistently received positive performance reviews, and has received annual merit salary increases, per Southwest Research policy and practice. He has also served as a Department Management Advisory Committee Member for four years. In 2010, Luna received an Associate's Degree in Industrial Technology, and in 2012, a Bachelor's Degree in Applied Arts and Sciences.

Luna filed his first administrative charge against Southwest Research in August 2012, alleging national origin discrimination based on a failure to promote him to the Machinist A position in October 2011, as well as alleging unequal pay between Hispanics and non-Hispanics. That charge as amended also included claims of unequal pay since December 2007 as well as harassment by his manager, Hal King, by unfairly criticizing his work performance. He further amended his charge to include discrimination claims based on race, in addition to national origin.

During the pendency of this lawsuit, Luna has filed two other administrative charges against Southwest Research. In September 2014, he filed a charge alleging national and race-based discrimination relating to conduct including racial slurs, workplace segregation, unequal application of benefits, and denial of access to education and training opportunities. Because these claims were also alleged in this suit, the EEOC elected to close this second charge. Again in April 2015, Luna filed an EEOC charge alleging discrimination, harassment, and retaliation on the

grounds that he received tuition reimbursement rather than advancement, has been subjected to harsh coaching and counseling sessions, and has been continuously harassed and threatened by an unidentified supervisor.

In this action, Luna alleges Southwest has intentionally or through reckless indifference subjected him to a hostile work environment due to his race and national origin; has failed to promote him due to his race and national origin; and, lastly, has retaliated against him for engaging in protected employment practices.

To support his claim for discriminatory promotion, Luna alleges Hal King, his supervisor, blocks the promotion of Hispanics and hires non-Hispanics in their stead. Specifically, he alleges in 2005, Greg Wattis from the Aerospace Division wanted to employ Luna, but King prevented the transfer. Then, in 2006, Luna claims to have met with a human resources representative who informed him that he needed to obtain a degree to be considered for any advancement. Luna further alleges in 2009, 2010, and 2011 he was not promoted to the Machinist A position.[1] In 2009, according to Luna, he asked for a promotion but was turned down, while apparently two undisclosed non-Hispanics received pay increases. Likewise in 2010, Luna asked for a promotion but was rebuffed, only to learn afterwards a non-Hispanic had received a pay increase. In 2011, Luna claims he finally learned he would receive a promotion, but was told that year he would not receive it because of budget cuts, although two non-Hispanics received pay increases that year and a third non-Hispanic was promoted to Lead Machinist.

In his claim for hostile work environment, Luna relies on wide-ranging allegations, including the use of racial slurs, shop segregation, policies unevenly applied across racial lines, and verbal harassment and abuse. According to Luna, the phrase "stupid Mexican" is used

---

[1] The machine shop currently has two positions for machinists, Lead Machinist and Machinist A, though in the past there were two additional positions, Machinist B and Principal Machinist. Def.'s Mot. Summ. J., King Dec., Ex. A.

throughout the shop on a regular basis by Jim Vandezande[2], James Henry, Tom Shackelford, Steve Meltsberger, and Steve Clark. He alleges he is subject to abusive language from Vandezande, and has engaged in verbal confrontations with Rodriguez—though these specific interactions with Vandezande and Rodriguez appear to lack racial overtones. *See* Pls.' Resp., Luna Dec., Ex. B. On another occasion, Luna asserts that Vandezande, in Rodriguez's presence, suggested someone ought to physically assault Luna. *Id.* Luna also points to an e-mail—the so-called "Dog E-mail"— allegedly circulated in the shop, in which welfare recipients are compared to canines, as evidence of a racially discriminatory environment. Def.'s Mot. Summ. J., Ex. Z.[3] Additionally, plaintiffs claim Rodriguez subjects them to profanity, and they are not allowed to eat and drink with non-Hispanics. Pls. First Am. Compl. ¶ 31.

In his claim for retaliation, Luna cites much of the same conduct. Additionally, he relates an incident in which Vandezande loudly indicated to non-Hispanic coworkers to not tell Luna anything, because he would likely report them. Pls.' Resp., Luna Dec., Ex. B. On another occasion, he asserts Rodriguez told him Southwest Research's attorney would "nail [Luna] to the wall." *Id.* He also cites an incident in which two coworkers walked around with a pad of paper and pen stating if anyone had any problems with plaintiffs "to let them know because [King] had gave him permission to do so." *Id.* Luna additionally relates an incident in which James Henry, while discussing the influx of immigrant children, stated "we ought to just shoot 'em when they cross so

---

[2] At deposition, Luna asserts Jim Vandezande apologized after this lawsuit was filed and has not used the phrase since. Def.'s Mot. Summ. J., Ex. D, at 305.

[3] The e-mail contains a picture of a group of dogs, under which it reads:

> This morning I went to sign my dogs up for welfare. At first, the lady said, 'Dogs are not eligible to draw welfare.' So I explained to her that my dogs are mixed in color, unemployed, lazy, can't speak English and have no friggin clue who their Daddys are. They expect me to feed them, provide them with housing and medical care. So she looked in her policy book to see what it takes to qualify. My dogs get their first check on Friday. (Damn, this is a great country.)

Def.'s Mot. Summ. J., Ex. Z.

we don't have problems like we do in the shop." Pls.' Resp., Ex. B., Luna Dec. Luna further alleges either King or Rodriguez, or both, are aware of these incidents and conduct.

Finally, Luna, along with all other plaintiffs, recite in their affidavits attached to plaintiffs' response, a list of seven policies or actions attributed to Southwest Research that they assert demonstrates a hostile work environment. That conduct includes allowing non-Hispanics to dress on the shop floor while Hispanics must dress in the restrooms; requiring Hispanics to visit the clinic when ill when non-Hispanics are sent directly home; requiring non-Hispanics to use vacation time for bad weather days, while not making the same requirement of non-Hispanics; requiring Hispanics to call in every two hours when ill, but not applying that rule to non-Hispanics; the use of racial epithets by Vandezande and inaction on King's part to stop such use; requiring Hispanics to alter performance reviews, while non-Hispanics are not required to do so; and denial of access to educational training and opportunities on equal footing with non-Hispanics. *Id.*

### 2. *Claro Martinez*

Martinez began working at Southwest Research in 1980 as a Machinist Helper and Utility Worker. He was then promoted to Machinist C and later to Machinist B in 1993. In 2006, he was promoted to the Principal Machinist position. In 2014, he was promoted to the Machinist A position. He remains in that position currently.

In February 2013, Martinez filed an EEOC complaint alleging race and national origin discrimination. He filed another charge in September of 2014 in which he added a retaliation claim to his previous discrimination claim. The charges contained identical language to that found in Luna's charges.

To support his failure to promote claim, Martinez relies on the hiring of Lyndon Morgan to the Machinist A position in 2006, the hiring of Steve Clark and David Reid to the Machinist A position in 2007, and the hiring of John Fawcet and Robert Pena in 2012. Martinez asserts in his

affidavit that in each of those years he inquired with King, his supervisor, about a promotion and a raise, but was in each case rebuffed—and in one instance according to Martinez, King informed him he was "not promotable." Pls.' Resp., Luna Dec., Ex. A.

Like Luna, Martinez alleges general racial animus in the machine shop, including the use of racial slurs, shop segregation, policies unevenly applied across racial lines, and verbal harassment and abuse. Regarding the phrase "stupid Mexican," Martinez stated at deposition he recalled only hearing the term being used one time, that the phrase was directed at a person who is not a party in this suit, and he was unsure whether it was said in a joking manner. Def.'s Mot. Summ. J., Ex. Y., Martinez Dep., at 175–77. Regarding the Dog E-Mail, Martinez stated he had only seen it on the night before the deposition. *Id.* at 110. Lastly, Martinez stated he had heard the term "beaner" used in the workplace, but he also stated that it was not directed at him, and he did not report its use to management. *Id.* at 307–08, 321.

Regarding his retaliation claim, Martinez relies on the same events relied upon by Luna. Specifically, he recites in his affidavit the incident where Steve Meltsberger and Patrick Willingham circulated the shop encouraging fellow employees to report plaintiffs for any misconduct. Pls.' Resp., Ex. A, Martinez Dec. He also relies on James Henry's alleged statement regarding the shooting of those caught illegal crossing the border. *Id.* Lastly, Martinez recites the same seven policies recited by Luna.

### 3. *Juan Gonzalez*

Gonzalez began working at Southwest Research in 1973, and after holding various positions he was promoted to the position of Saw Room Operator Administrative Coordinator. He is the only individual at Southwest Research employed at this position. He retired in May of this year.

In February 2013, Gonzalez filed a discrimination charge against Southwest Research with the EEOC. He filed a second charge in September of 2014, which contained the same allegations Luna's September 2014 charge did. According to Gonzalez, both of his charges were typed by Luna.

Regarding his claim for failure to promote, Gonzalez simply claims he should have been promoted to the Machinist C position—although he was informed that the position no longer existed at that time.

In terms of his hostile work environment claim, Gonzalez alleges the same facts and events as those alleged by both Martinez and Luna. Like Martinez, Gonzalez admitted he had only seen the Dog E-Mail on the night before his deposition, and, moreover, he found it amusing. Def.'s Mot. Summ. J., Ex. L, Gonzalez Dep. at 259. Gonzalez, like Martinez, stated he has heard Vandezande use the term "stupid Mexican" but was unsure to whom the term was directed. *Id.* at 267. Of the four plaintiffs, only Gonzalez stated he has heard the term "beaner" used at Southwest Research. *Id.* at 224–25. Gonzalez also recounted having heard Vandezande and another employee refer to one another as "beaner," and because he did look at them he was unsure whether it was directed at him or was exclusively being used between the coworkers. *Id.* Gonzalez also relies on the same seven policies and actions relied upon by Luna and Martinez.

On his retaliation claim, Gonzalez also mentions the "Shoot 'Em" comment made by James Henry, as well as the reporting incident involving Steve Meltsberger and Patrick Willingham.

### 4. *Richard Lopez*

Lopez began working as a Utility Worker at Southwest Research in August of 2000. Lopez is the only Utility Worker employed in the machine shop. He has received annual merit salary increases every year of his employment. Lopez has not received a promotion since he began working at Southwest Research.

Like the other plaintiffs, Lopez filed an EEOC charge in February 2013 alleging discrimination based on race and national origin as well as retaliation. He submitted another charge in August 2014 alleging similar conduct.

In the complaint, Lopez alleges that any time he inquired about a promotion King would tell him he was only hired for custodial duties and would not be promoted. Pls.' First. Am. Compl. ¶ 24. He further alleges King forced him to remove his promotion request from his evaluation form, and that King has belittled him in front of coworkers. *Id.* Lastly, he claims he was forced to utilize his truck for work purposes and was denied fuel reimbursement. *Id.*

In his failure to promote claim, Lopez cites an instance where he included his wish to be promoted to the Tool Crib Attendant position in his performance evaluation form. In response, he says King instructed him to remove the request and told another employee to type a new evaluation without the promotion request. Pls.' Resp., Ex. D., Lopez Dec.

Regarding hostile work environment, Lopez cites the same conduct as the other three plaintiffs. According to defendants, he was equivocal at deposition with respect to the use of the phrase "stupid Mexican," though they fail to substantiate that claim. Regarding the Dog E-Mail, Lopez conceded at deposition he did not understand what the e-mail said until it was translated for him. Def.'s Mot. Summ. J. Ex. AA., Lopez Dec. He also recites the same seven policies or actions as the other three plaintiffs. In terms of his retaliation claim, he also invokes the "Shoot 'Em" comment, and the reporting incident.

## II. MOTION TO STRIKE

Defendant moves to strike and objects to various portions of plaintiffs' affidavits attached to their response to defendant's motion. As noted above, the Court denies Southwest Research's motion to strike, but considers each objection to plaintiffs' summary judgment evidence independently.

*Luna's Affidavit:*

Defendant objects to the following portions of Luna's affidavit on the grounds that they are conclusory, speculative, or both:

Statement 1: "Hal gave everyone 3 to 5 days to turn in evals except Plaintiffs."

Statement 2: "Gilbert leaked information to Steve M. about me meeting with Tony M. on aug. 7, 2013."

Statement 3: "Aug. 30 Hal tries to coerce Richard Lopez and Claro Martinez in changing their input in performance evaluations."

Statement 4: "After filing initial charges til latest evaluation, Richard would still lift heavy barrels of shavings despite doctor's orders and gets treated with hostility by non-hispanic workers."

Statement 5: "After filing initial charges til latest evaluation, Juan would get harassed by Gilbert on the phone when calling in sick and was excluded from the performance evaluation process until I mentioned it to you."

Statement 6: "This harassment and retaliation has been ongoing since I began work for Hal King, and has intensified since filing a charge of discrimination and Federal Complaint."

Statement 8: "I am required to dress in the restroom along with other Hispanics while non-Hispanics [d]ress in the shop floor."

Statement 9: "I am required to visit the clinic when ill, however non-Hispanics are sent directly home when they complain of illness."

Statement 10: "I along with other Hispanics is required to use vacation time to cover bad weather days, where non-Hispanics are not."

Statement 11: "I along with other Hispanics is required to call in every two hours while ill to report his status, whereas non-Hispanics are not required to do this."

Statement 12: "I along with other Hispanics, is made to alter his comments and performance evaluations while non-Hispanics are not"

Statement 13: "I was denied the same access to educational training and opportunities as Caucasian employees."

Statement 14: I have been the victim of racial epithets by non-Hispanic peers, including Jim Vandezande (lead machinist). Complaints to Hal King result only in comments that I and other Hispanics "need to get a tougher skin" or "need to be the better person."

Defendant objects to the following statements contained in Luna's affidavit because they constitute hearsay under Rule of Evidence 802:

Statement 15: "Jan. 8 2014 Jim Vandezande starts making loud comments saying 'someone ought to kick his ass referring to me (ruben)."

Statement 16: "Jan. 15 2014 Jim Vandezande yells out to his Non-Hispanic co-workers not to tell me (ruben) anything because I (ruben) will get LULAC on them."

Statement 17: "Steve Maltsberger and Pat Willingham are going around the shop with a pad and pen stating 'if anyone had problems with [plaintiffs] to let them know because Hal gave him permission to do so."

Statement 18: "Gilbert slams a piece of iron making a loud noise and says 'here is your fucking job'"

Statement 19: "On or about late july 2014 James Henry and Tom Shackelford talking about the inlux of immigrant children coming in to the U.S. . . James Henry states 'we ought to just shoot em when they cross so we do not have to have problems like we do in the shop.'"

Statement 20: "Still Jim Vandezande yells his vulgar language and all the non-hispanics mimic words."

Statement 21: "On or about December 10, 2014, I was speaking to another co-worker about a job and Jim Vandezande yells out, 'Shut the Fuck Up.'"

Statement 22: "On or about January 15, 2015 Jim Vandezande tells me 'This is a new year and this shop would be better if you got the Fuck out of here.'"

Statement 23: "[Jim Vandezande] stated again 'what kind of Fuckin Machinist are you that you could not come to me for help with the job."

Statement 24: "[Jim Vandezande] interrupted me saying 'I tell them not to tell me how to do my job."

Statement 25: "On or about March 12, 2015 Jim once again approaches me and says 'what kind of fuckin' machinist are you.'"

Statement 26: "[Rodriguez calls me into his office and tells me what medical problem I have that I need to see the doctor so much . . . [h]e then jumped out of his chair and **harshly** told me, 'he is sick and tired of people taking off for no reason and that I am young and should not have any medical problems' . . . He then replied 'go to work and I'll talk to you later' . . . "he told me that, 'I should be afraid of Mario Barrera (SWRI's external counsel) because he is not going

to play around with me, he's going to nail me to the wall' . . . his reply was 'get the hell out of my office' so I left and went back to work" (emphasis in original).

Statement 27: "[Rodriguez] asked me in a harsh tone why I was on the computer for so long . . . I should tell him when I have to do training."

*Martinez's Affidavit*

Defendant objects to the following portions of Martinez's affidavit on the grounds that they are conclusory, speculative, or both:

Statement 1: "Harassment came to atemporary [sic] stop because of Ruben filing a charge of discrimination."

Statement 2: "Harassment has been steady at this point."

Statement 3: "Harassment continues."

Statement 4: "Harassment continued in the form of criticizing my work without any guidance."

Statement 5: "This harassment and retaliation has been ongoing since I began work for Hal King, and has intensified since filing a charge of discrimination and Federal Complaint."

Statement 6: "I am required to dress in the restroom along with other Hispanics while non-Hispanics [d]ress in the shop floor."

Statement 7: "I am required to visit the clinic when ill, however non-Hispanics are sent directly home when they complain of illness."

Statement 8: "I along with other Hispanics is required to use vacation time to cover bad weather days, where non-Hispanics are not."

Statement 9: "I along with other Hispanics is required to call in every two hours while ill to report his status, whereas non-Hispanics are not required to do this."

Statement 10: "I along with other Hispanics, is made to alter his comments and performance evaluations while non-Hispanics are not."

Statement 11: "I was denied the same access to educational training and opportunities as Caucasian employees."

Statement 12: "I have been the victim of racial epithets by non-Hispanic peers, including Jim Vandezande (lead machinist). Complaints to Hal King result only in comments that I and other Hispanics "need to get a tougher skin" or "need to be the better person.""

11

Statement 13: "One non-Hispanic [(]John Fawcet) and one Hispanic (Robert
Pena) employee were hire as Machinist A without posting a
Machinist A positions, the Hispanic Machinist A had credentials."

Defendants also lodge hearsay objections against Martinez's affidavit testimony reflecting

the same statements described by Luna's Statements 17 and 19.

*Lopez's Affidavit*

Defendant objects to the following portions of Lopez's affidavit on the grounds that they

are conclusory, speculative, or both:

Statement 1: "Harassment continues throughout the year."

Statement 2: "Harassment continues."

Statement 3: "Harassment started to escalate by my two supervisors belittling me
in front of people this year."

Statement 4: "This harassment and retaliation has been ongoing since I began
work for Hal King, and has intensified since filing a charge of
discrimination and Federal Complaint."

Statement 5: "I am required to dress in the restroom along with other Hispanics
while non-Hispanics [d]ress in the shop floor."

Statement 6: "I am required to visit the clinic when ill, however non-Hispanics are
sent directly home when they complain of illness."

Statement 7: "I along with other Hispanics is required to use vacation time to
cover bad weather days, where non-Hispanics are not."

Statement 8: "I along with other Hispanics is required to call in every two hours
while ill to report his status, whereas non-Hispanics are not
required to do this."

Statement 9: "I along with other Hispanics, is made to alter his comments and
performance evaluations while non-Hispanics are not."

Statement 10: "I was denied the same access to educational training and
opportunities as Caucasian employees."

Statement 11: I have been the victim of racial epithets by non-Hispanic peers,
including Jim Vandezande (lead machinist). Complaints to Hal
King result only in comments that I and other Hispanics "need to
get a tougher skin" or "need to be the better person."

Defendants also raise hearsay objections against Lopez's affidavit testimony reflecting the same statements described by Luna's Statements 17 and 19.

*Gonzalez's Affidavit*

Defendant seeks to strike the following portions of Gonzalez's affidavit on the grounds that they are conclusory, speculative, or both:

Statement 1: "Harassment remains unchanged."

Statement 2: "[C]ontinually harassed while undergoing severe health issues."

Statement 3: "Harassment remains unchanged."

Statement 4: "Harassment remains unchanged."

Statement 5: "Harassment remains unchanged."

Statement 6: "This harassment and retaliation has been ongoing since I began work for Hal King, and has intensified since filing a charge of discrimination and Federal Complaint."

Statement 7: "I am required to dress in the restroom along with other Hispanics while non-Hispanics [d]ress in the shop floor."

Statement 8: "I am required to visit the clinic when ill, however non-Hispanics are sent directly home when they complain of illness."

Statement 9: "I along with other Hispanics is required to use vacation time to cover bad weather days, where non-Hispanics are not required to do this."

Statement 10: "I along with other Hispanics is required to call in every two hours while ill to report his status, whereas non-Hispanics are not."

Statement 11: "I along with other Hispanics, is made to alter his comments and performance evaluations while non-Hispanics are not."

Statement 12: "I was denied the same access to educational training and opportunities as Caucasian employees."

Statement 13: I have been the victim of racial epithets by non-Hispanic peers, including Jim Vandezande (lead machinist). Complaints to Hal King result only in comments that I and other Hispanics "need to get a tougher skin" or "need to be the better person."

Defendants also object to Gonzalez's affidavit testimony reflecting the same statements described by Luna's Statements 17 and 19.

### A. Legal Standard

Federal Rule of Civil Procedure 56(c)(4) requires "[a]n affidavit used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Consequently, in deciding a motion for summary judgment a court may only consider "materials which were included in the pretrial record and that would have been admissible evidence." *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995). A party may not raise an issue of material fact by impeaching, without explanation, sworn testimony. *S.W.S Erectors v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). And a party may not rely on factual allegations set forth in an affidavit that are not within the affiant's personal knowledge. *Direct TV, Inc. v. Budden*, 420 F.3d 521, 529–30 (5th Cir. 2005). And particularly salient here, "[m]ere conclusory allegations are not competent summary judgment evidence." *Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir. 1994).

### B. Analysis

#### 1. *Plaintiffs' "Harassment" Statements*

Based on the foregoing principles, defendant's objections to following statements are **SUSTAINED**: Luna Statement 6, Martinez's Statements, 1-5, Lopez Statements 1-4, and Gonzalez Statements 1-6. Each of these statements in their respective affidavits are made without factual context whatsoever. They are hollow for the purpose of establishing the existence of a triable issue of fact.

#### 2. *Defendant's Other Objections*

Defendants object to the following statements as speculative, conclusory, or both: Luna Statements 1-5 and 8-14, Martinez Statements 6-12, Lopez Statements 5-11, and Gonzalez Statements 7-13. The plaintiffs' affidavits do not state the facts they contain are based on the affiant's personal knowledge, nevertheless, a party need not invoke "magical words" to show statements made in an affidavit are within the affiant's personal knowledge. *Direct TV*, 420 F.3d at 530. But the statement must disclose facts which allow a court to reasonably infer the affiant's personal knowledge based on their position and the nature of their participation in the matters to which they swore. *Id.* The objected-to statements fail in this regard.

Luna's first five statements pertain to subject matter from which this Court cannot reasonably infer personal knowledge. Statement 1 refers to a policy in which all other employees, except plaintiffs, are allowed extra time to complete their evaluations. Yet, Luna's position as a Machinist does not allow the reasonable inference he would have personal knowledge regarding the administration of evaluation forms in the shop. Defendant's objection to Statement 1 is **SUSTAINED**.

Statement 2 describes an incident where Rodriguez allegedly leaked information about Luna's meeting with another employee. The statement does not disclose how Luna gained this information, nor does it allow the Court to infer how the information was obtained—thereby preventing the Court from inferring personal knowledge. Defendant's objection to Statement 2 is **SUSTAINED**.

Statement 3 alleges King coerced Lopez and Martinez into changing their evaluation forms. It suffers the same defect as Statement 2. Defendant's objection is **SUSTAINED**.

Statement 4 describes how plaintiff Lopez would be forced to lift heavy barrels despite doctor's orders, and would be treated with hostility by non-Hispanic workers. It is reasonable to

infer from this statement Luna observed plaintiff Lopez lifting heavy barrels as they both worked in the same space, and therefore, defendant's objection to that portion of the testimony is **OVERRULED**. Regarding the existence of doctor's orders and non-Hispanic treatment of Lopez, defendant's objection is **SUSTAINED**. It cannot be reasonably inferred Luna would have personal knowledge of Lopez's communications with Lopez's doctors. Likewise, the unadorned statement that Lopez suffered hostility from non-Hispanic workers is conclusory.

Statement 5 regards the harassment of plaintiff Gonzalez when he would call in sick and his exclusion from the performance evaluation process. Defendant's objection to this statement is **SUSTAINED**. Luna provides no facts permitting the inference that he would have personal knowledge of how Gonzalez was treated when he called in sick. Moreover, as noted above, Luna has provided no facts to show, and the Court cannot reasonably infer from his position, that he would have knowledge of the performance evaluation process. Luna, therefore, has failed to show he has personal knowledge of this alleged conduct.

Southwest Research also objects to Luna's Statements 8-14, Martinez's Statements 6-12, Lopez's Statements 5-11, and Gonzalez's statements 7-13. These statements are identical across the four affidavits attached to plaintiffs' response.

Luna's Statement 8, Martinez's Statement 6, Lopez's Statement 5, and Gonzalez's Statement 7 describe a policy whereby Hispanics are forced to change in the bathroom, whereas non-Hispanics are allowed to change on the shop floor. It appears to be undisputed in the record that some employees in the Machine Shop change their clothing to perform their duties, and, therefore, it is reasonably inferable plaintiffs would have personal knowledge regarding such a policy and its application to Hispanics and non-Hispanics alike. Defendant's objections are **OVERRULED**.

Luna's Statement 9, Martinez's Statement 7, Lopez's Statement 5, and Gonzalez's Statement 8 detail a policy in which Hispanics are forced to visit a clinic when ill, while non-Hispanics are sent home. At his deposition, Martinez testified he had no personal knowledge whether this policy was equally enforced on non-Hispanic employees. Def.'s Mot. to Strike, Ex. 1, Martinez Dep. at 297. Because his affidavit provides no facts demonstrating he later acquired such personal knowledge, defendant's objection to Martinez's Statement 7 is **SUSTAINED** to the extent it touches upon the policy's application to non-Hispanics. Likewise, Gonzalez testified he has no knowledge regarding the policy's application, or lack thereof, to other employees. Def.'s Mot. to Strike, Ex. 2, Gonzalez Dep. at 244–45. Accordingly, defendant's objection to his statement is **SUSTAINED** to the extent it touches upon the policy's application to non-Hispanics. Luna's and Lopez's statements lack any factual basis whatsoever, and further, their positions in the machine shop do not permit the reasonable inference they would have personal knowledge whether this policy is applied to Hispanics and non-Hispanic alike. Defendant's objections to their statements are also **SUSTAINED** to the extent they speak to the policy's application to non-Hispanics.

Luna's Statement 10, Martinez's Statement 8, Lopez's Statement 6, and Gonzalez's Statement 9 outline a policy in which Hispanics are forced to utilize vacation time to cover for time spent out of work during bad weather days, but non-Hispanics are not forced to do so. The plaintiffs' positions at Southwest Research coupled with the bare statements in their affidavits do no permit the reasonable inference that they had personal knowledge regarding the policy's

17

application to non-Hispanics. As a consequence, defendant's objection to plaintiffs' statements is **SUSTAINED** to the extent it portrays the policy's application to non-Hispanics.[4]

Luna's Statement 11, Martinez's Statement 9, Lopez's Statement 7, and Gonzalez's Statement 10 depict a policy requiring Hispanics, but not non-Hispanics, to call in every two hours when ill. Gonzalez stated at his deposition he had no personal knowledge of this policy not being applied to non-Hispanics. Def.'s Mot. to Strike, Ex. 2, Gonzalez Dep. at 247. Martinez stated the same. Def.'s Mot. to Strike, Ex. 1, Martinez Dep. at 339. Defendant's objection to his statement is **SUSTAINED** as far as the statement concerns non-Hispanics. Moreover, neither Luna nor Lopez provide factual context from which the Court may infer personal knowledge—defendant's statements are **SUSTAINED** in the same manner.

Luna's Statement 12, Martinez's Statement 10, Lopez's Statement 8, and Gonzalez's Statement 11 recount a policy under which Hispanics are made to alter their comments and performance evaluations and non-Hispanics are not. Both Martinez and Gonzalez stated at deposition they have no knowledge whether non-Hispanics have been asked to alter their evaluations. Def.'s Mot. to Strike, Ex. 1, Martinez Dep. at 297; Ex. 2, Gonzalez Dep. at 252. Defendant's objection to these statements is therefore **SUSTAINED** to the degree that it describes the policy's application to non-Hispanics. Moreover, Luna's and Lopez's statements are insufficient to show personal knowledge as concerns the policy's application to non-Hispanics— defendant's objection to their statements is also **SUSTAINED** in that regard.

Luna's Statement 13, Martinez's Statement 11, Lopez's Statement 9, and Gonzalez's Statement 12 describe plaintiffs' subjection to racial epithets in the workplace, as well as King's

---

[4] Additionally, Gonzalez stated at deposition he has never been instructed to use vacation time to cover bad weather days. Def.'s Mot. to Strike, Ex. 2, Gonzalez Dep. at 245. Accordingly, his statement, if considered, would be insufficient to raise an issue of material fact. *See Infax*, 72 F.3d at 95.

response to their complaints. Insofar as the statements regard the use of racial epithets, they are wholly conclusory and therefore defendant's objection is **SUSTAINED** as to those portions of the statements.[5]

Luna's Statement 14, Martinez's Statement 12, Lopez's Statement 10, and Gonzalez's Statement 13 state the plaintiffs have been denied equal access to educational opportunities. These statements are also wholly conclusory. Defendant's objection is **SUSTAINED**.

Defendant also objects to Martinez's Statement 12 as speculative. Particularly, Southwest Research takes issue with the assertion on Martinez's part that persons were hired without the position being posted. Martinez fails to demonstrate how he knew the position was not posted, nor does his position at Southwest Research lead to the reasonable inference he would necessarily know when postings occurred. Defendant's objection is **SUSTAINED**.

### 3. *Hearsay Objections*

Defendants object to the following statements as hearsay. Luna's Statements 15-26, as well as the "Shoot 'Em" statement, and the reporting incident described by all plaintiffs in their respective affidavits.

Luna's Statement 15 describes an incident where Jim Vandezande allegedly stated someone should physically assault Luna. Defendant's objection is **OVERRULED**. Within the context of this case, it is clear that the purpose of this statement is not to prove the truth of the matter asserted, but rather, to prove the utterance of the statement itself.

Luna's Statement 16 relates an incident in which Vandezande allegedly stated fellow employees ought to avoid speaking to Luna for fear of being reported. Defendant's objection is

---

[5] Gonzalez further stated Hal King has never made these statements to him. Def.'s Mot. to Strike, Ex. 2, Gonzalez Dep. at 247.

**OVERRULED** as far as the statement's use to show it was made, but is **SUSTAINED** for the purpose of showing fellow employees indeed failed to communicate with Luna.

Luna's Statement 17 is one which is made by all plaintiffs and objected to in each instance. It describes an incident where two of the plaintiffs' coworkers walked around telling others to report the plaintiffs, and that such conduct was condoned by Hal King. Defendant's objection is **SUSTAINED** for the purpose of showing Hal King condoned this conduct, or to show that the plaintiffs were reported because of this conduct. It is **OVERRULED** for the purpose of demonstrating the alleged conduct occurred.

Luna's Statement 18 relates an incident in which Rodriguez allegedly slapped a piece of iron and directed profanity at Luna. Obviously the statement is not offered to prove the truth of the matter asserted. Defendant's objection is **OVERRULED**.

Luna's Statement 19 details an utterance allegedly made by James Henry. All plaintiffs describe this occurrence in their affidavits, and defendant objects to its inclusion in each affidavit. Allegedly, James Henry stated all immigrant children caught crossing the border should be shot, so that there would be no problems in the machine shop. Defendant's objection is **OVERRULED**. Plainly, plaintiffs do not cite this remark to show the truth of the matter asserted.[6]

Luna's Statement 20 recites an instance in which Vandezande used vulgarity and coworkers mimicked the vulgarity in some fashion. The statement does not contain an assertion. The objection is **OVERRULED**.

---

[6] Defendant ought to be reminded that although a factual allegation contains a statement, a hearsay objection is not warranted as a matter of course. *See generally* 30 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Evidence*, § 6322 (1st ed.).

Luna's Statement 21 relates an incident where Vandezande yelled vulgarity at Luna. Once again, no assertion is contained in the statement. The objection is **OVERRULED**.

Luna's Statement 22 pertains to a comment allegedly made by Vandezande in which he told Luna in vulgar terms the shop would be better off if Luna were not present. Like the previous statements, defendant's objection is **OVERRULED**.

Statements 23 and 25 describe identical statements made by Vandezande toward Luna regarding Luna's competency as a machinist. Defendant's objections are **OVERRULED** as to these statements.

Statement 24 likewise does not contain hearsay. The objection is **OVERRULED**.

Statements 26 and 27 describe a series of interactions between Luna and Rodriguez. There is no hearsay here. Defendant's objection is **OVERRRULED**.

### III. MOTION FOR SUMMARY JUDGMENT
#### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 325 (1986)). While the court is obliged to resolve factual controversies in the nonmovant's favor, the nonmoving party cannot satisfy its burden by merely establishing "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986),

by mere conclusory allegations in affidavits, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), or "by only a scintilla of evidence," *Little*, 37 F.3d at 1075 (internal quotation marks omitted). Rather the nonmovant must identify specific evidence in the record and articulate the precise manner in which evidence supports his or her claim. *Flowers v. Deutsche Bank Nat'l Trust Co.*, 614 Fed. App'x 214, 215 (5th Cir. 2015) (per curiam) (citing *Regas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

## A. Failure to Promote

To establish a prima facie case of race-based failure to promote, a plaintiff must establish (1) she is a member of the class; (2) she sought and was qualified for a position for which applicants were being sought; (3) she was rejected for the position; (4) the employer hired a person outside of the plaintiff's protected class or continued to seek applicants with the plaintiff's qualifications. *McCullin v. Miss. Dept. of Public Safety*, 782 F.3d 251, 258 (5th Cir. 2015). Once the plaintiff has made this showing, the burden then shifts to the defendant to show a legitimate, nondiscriminatory reason for the failure to hire the plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant can make this showing, the burden then returns to the plaintiff to show that the stated reason is pretexual, *Id.* at 804, or that the plaintiff's race was a motivating factor in plaintiff's rejection, *Autry v. Fort Bend Indep. School Dist.*, 704 F.3d 344, 347 (5th Cir. 2013).

Luna claims Southwest Research failed to promote him to the Machinist A position in 2009, 2010, and 2011. Southwest Research correctly points out that a failure to promote claim must be brought within 300 days of the refusal to hire. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Luna filed his first EEOC charge on August, 2012. Luna has not argued tolling, equitable or otherwise, applies. He therefore may only rely on discriminatory hiring acts occurring after October 11, 2011. Since that time, defendants have put forth unchallenged evidence

showing only two individuals other than Luna have been promoted to the Machinist A position—Claro Martinez Jr. and Rudy Hernandez. Def.'s Mot. Summ. J., Ex. N, Magaro Dec. The record establishes Martinez and Hernandez are fellow Hispanics. They are not proper comparators for discriminatory promotion practices because they belong to Luna's protected class. Summary judgment shall be **GRANTED** as to Luna's failure to promote claim.

Gonzalez bases his failure to promote on Southwest Research's failure to promote him to the Machinist C position. However, defendants have put forth evidence showing the Machinist C position no longer existed when Gonzalez sought the promotion. Def.'s Mot. Summ. J., Ex. B, Machine Shop Chart. Moreover, Gonzalez conceded this was the case at his deposition. Def.'s Mot. Summ. J., Ex. L, Gonzalez Dep. at 154. Gonzalez, therefore, cannot make a prima facie showing he sought a position for which applicants were being sought. Summary judgment shall likewise be **GRANTED** as to Gonzalez's failure to promote claim.

Defendants claim and Lopez admits his failure to promote claim is grounded on a failure to promote him to a position that did not exist. Def.'s Mot. Summ. J., Ex. S, Lopez Dep. at 32. Summary judgment is appropriate to Lopez's failure to promote claim and shall be **GRANTED**.

Martinez's failure to promote claim stems from Southwest Research's alleged hiring of Robert Pena, John Fawcet, Steve Clark, David Reid and Morgan Lyndon to the Machinist A position without having posted the position and after Martinez allegedly asked for a promotion various times. Pls.' Resp. at 17, Ex. A, Martinez Dec. Southwest Research objected to Martinez's statement with regard to Robert Pena and John Fawcet—that objection is sustained concerning the failure to post the position. Southwest Research did not object to the statement regarding Steve Clark and David Reid's hiring in 2006. In its motion for summary judgment, Southwest Research argues that the only persons promoted to the position allegedly sought by Martinez were Luna and

Hernandez, and as a result Martinez lacks proper comparators to support his claim for failure to promote. Southwest Research's position, however, is flawed to the extent it does not speak to, or provide, evidence regarding Steve Clark and David Reid. Nevertheless, in response to an order issued by this Court pursuant to Rule 56(f), plaintiffs concede the claim is not actionable because of limitations. Pls.' Resp. to Court's Order, ECF No. 74, at 1. Martinez's failure to promote claims shall therefore be **DISMISSED**.

### B. Hostile Work Environment

To establish a claim for hostile work environment, a plaintiff must show (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take proper remedial action. *Williams-Boldwar v. Denton Cnty., Tex.*, 741 F.3d 635, 640 (5th Cir. 2014). To show the alleged hostile environment affected a term, condition, or privilege of employment, the complained-of conduct must be so severe or pervasive that it destroys the protected class member's opportunity to succeed in the workplace. *Allan v. Holder*, 494 Fed. App'x 428, 432 (5th Cir. 2012) (quoting *Hackman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004)) (internal quotation marks omitted). Because the test is stated in the disjunctive, a single egregious act may be sufficiently severe on its own to meet this element, or, conversely, incidents of harassment, though slight, may through their frequency and number rise to the requisite level of pervasiveness so as to be cognizable. *See Lauderdale v. Tex. Dept. of Criminal Justice,* 512 F.3d 157, 163 (5th Cir. 2007). The test requires the court to weigh the frequency of the alleged conduct, its severity, the degree to which it was physically threatening or humiliating,

its interferences with the plaintiff's work performance, and whether it was simply an offensive utterance. *Id.* (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).

Plaintiffs raise in their complaint and testimony, both at deposition and in their affidavits, a long list of allegedly abusive and racist conduct on the part of Southwest Research employees.[7] While general for the most part, their testimony is specific with regard to James Henry's "Shoot 'Em" comment. They also have provided some concrete evidence—though inconsistent—as to the use of the terms "stupid Mexican" and "beaner" in their presence. Martinez has also put forth testimonial evidence that sometime in 2007 two Caucasians were promoted, while he was not. And further, the so-called Dog E-Mail is probative of a racially hostile environment. But these instances in their totality, spanning what appears to be years, do not rise to the level of severity or pervasiveness required to be cognizable under Title VII, even under a light most favorable to them. Henry's "Shoot 'Em" comment, though thoroughly xenophobic, was not directed at the plaintiffs. Likewise, only Luna stated he was subjected directly to the term "stupid Mexican," while the other plaintiffs' testimony was either too general to be considered for the purpose of this motion, or involved the overhearing of the term being used. Plaintiffs provide no testimony, except for that of Luna, demonstrating the term was directed at them. The same is true for the use of the term "beaner" as attested to by Gonzalez and Martinez. Both stated that while the term was used, it was directed at a fellow Anglo employee in what appear to be isolated incidents. Martinez's allegation of Southwest Research's failure to promote him in 2007 is entirely devoid of evidentiary value because Martinez has put forth no evidence demonstrating he was qualified for the position. Lastly, the Dog E-Mail, while probative of an atmosphere of tolerated bigotry, is insufficient—even when

---

[7] That conduct alleged in the complaint but which finds no evidentiary support in the record shall not be considered for the purpose of this motion. *See* Part II.A.

considered along with plaintiffs' other evidence—to raise a genuine issue as to severe or pervasive race-based harassment. Three of the plaintiffs admit they either had never seen the Dog E-Mail, did not understand it, or found it funny. Most importantly, these alleged acts occurred over a span of years. Each is insufficiently severe in its own right, and collectively they are too sporadic to be pervasive. Moreover, plaintiffs have presented no evidence demonstrating these incidents were physically threatening or humiliating or showing these incidents interfered with their work performance. On this limited evidentiary record, the Court cannot conclude plaintiffs have made a prima facie showing the terms of their employment have been sufficiently affected by this conduct so as to be cognizable under Title VII.

Plaintiffs have also alleged a series of acts that lack racial connotation. Their claim of disparate policies regarding being forced to call in while sick, taking vacation time for bad weather days, eating in a segregated environment, being forced to report to the clinic when ill, and being forced to alter their performance evaluations do not permit the inference these policies were in place because of the plaintiffs' race. While overtly racial comments and policies mandate such an inference, otherwise innocuous policies and acts require something more to permit the deduction they were the result of racial animus. *See Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). A common strategy to overcome this hurdle is by way of demonstrating the unequal enforcement of policies across racial lines. But plaintiffs have failed to provide such evidence here, and what evidence they attempted to provide did not demonstrate adequate personal knowledge to be properly considered.

Plaintiffs also attempt to overcome this hurdle with regard to other acts allegedly committed by Southwest Research employees that are not racially discriminatory on their face— such as a number of hostile statements by Vandezande—by invoking authority from this Circuit

26

in which a pattern of racially based harassment permitted the inference other forms of harassment were racially motivated as well. *See EEOC v. WC & M Enters.*, 496 F.3d 393 (5th Cir. 2007). Plaintiffs' reliance is misplaced. In *WC & M Enterprises*, the court had before it evidence detailing regular verbal harassment over a period of a year in which the plaintiff was called "Taliban;" was subject to intimations he participated in the attacks on September 11, 2001; had his religious faith openly mocked; was told to "go back where he came from;" and lastly was subject to another employee frequently banging on the glass partition in the plaintiff's office. *Id.* at 400. There are no analogous facts here. Even under a light most favorable to these plaintiffs, the evidence in this case is tame by comparison and fails to demonstrate the "long-term pattern of ridicule" that formed the basis of the Fifth Circuit's holding in *WC & M Enterprises*. 496 F.3d at 401. Accordingly the Court declines to consider plaintiffs' allegations concerning racially neutral conduct. *See Hiner v. McHugh*, 546 Fed. App'x 401, 408 (5th Cir. 2013) (affirming dismissal of hostile work environment claim where the plaintiff failed to articulate any connection between his race and the complained-of conduct).

Moreover, even if the Court were to accept plaintiffs' invitation to consider these other acts, there is a dearth of evidence detailing such conduct against three of the four plaintiffs. Of the four, only Luna provided evidence that demonstrated with any particularity he suffered racially neutral harassment. Specifically, he related incidents in which Vandezande subjected him to profanity and questioned his ability as a machinist. Importantly, however, Vandezande did not utter the "Shoot 'Em" statement, there is no evidence he used the word "beaner," nor did he send the Dog E-Mail. Finally, while there is some evidence Vandezande has directed the term "stupid Mexican" at Luna, Luna admits Vandezande apologized for using the term and has not used it since. Def.'s Mot. Summ. J., Ex. D, Luna Dep. 304–5. While it is true "workplace conduct is not

measured in isolation," *Hernandez*, 670 F.3d at 652 (internal quotation marks omitted), it is equally true it cannot be measured without some reference to its origin. Vandezande's past history with Luna does not permit the inference the entirety of his conduct toward Luna was racially motivated.

Lastly, yet equally fatal to their claims, plaintiffs failed to show with any degree of specificity that they reported these statements or this conduct to either Hal King, their manager, or Gilbert Rodriguez, their assistant manager. Their only evidence in this regard is a statement made in each of their affidavits in which they state generally—using identical language—that they reported the use of racial epithets to King and were told in response to "get a tougher skin" or "be the better man." They fail to indicate when they made these complaints and the specific subject matter of the complaints. Without these details, the Court cannot conclude plaintiffs have met their burden as to this prong. Though Rodriguez, another supervisor, allegedly sent the Dog E-Mail to another employee, that fact on its own does not permit the conclusion Rodriguez was privy to the remainder of plaintiffs' allegations. Defendant's motion for summary judgment shall be **GRANTED** as to plaintiff's hostile work environment claims.

### C. Retaliation

The Fifth Circuit has not recognized retaliatory hostile work environment claims under Title VII. *Tejada v. Travis Ass'n for the Blind*, 14-50943, 2015 WL 4184394, at *2 (5th Cir. July 13, 2015). To meet their initial burden for a retaliation claim under Title VII, a plaintiff must make a prima facie showing (1) she engaged in an activity protected by Title VII; (2) she was subject to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Id.*

Three of the four plaintiffs remain employed at Southwest Research. Plaintiff Gonzalez retired since the filing of this suit for reasons unassociated with this action. Other than Lopez

having been written up for the first time since the filing of his EEOC complaint, the plaintiffs do not allege any adverse employment action on the part of Southwest Research aside from their general allegations that they have been subject to racial epithets since filing suit; the incident in which Steve Maltsberger and Pat Willingham told other employees to report the plaintiffs and that King had told them to do so; and, Vandezande's comment not to tell Luna anything. Even if the Fifth Circuit recognized retaliatory hostile work environment, plaintiffs have failed to meet their prima facie burden on such a claim. They fail to provide any concrete evidence of the use of "beaner" or "stupid Mexican" since the filing of their EEOC complaints, and though they claim Lopez has received a write up, they fail to provide any evidence in that regard. The only substantive evidence plaintiffs put forth regard the comments by Willingham, Maltsberger, and Vandezande. These two incidents alone are insufficient to raise a material fact as to an adverse employment action. Moreover, as defendants point out, such conduct does not disclose official action on Southwest Research's part. "Actions of ordinary employees are not imputable to their employer unless they are conducted in furtherance of the employees business." *Hernandez*, 670 F.3d at 658. Plaintiffs have put forth no evidence[8] anyone other than ordinary employees engaged in such conduct, nor have they adduced evidence indicating that these employees were acting in furtherance of Southwest Research's business. Thus, that the Fifth Circuit has not recognized their claim notwithstanding, they have failed to make a prima facie showing of retaliation.

### D. Plaintiffs' Other Claims

Plaintiffs additionally seek relief under Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code §§ 21.001 *et seq.* Because one of the purposes of the TCHRA is the execution of the policies of Title VII of the 1964 Civil Rights Act, Texas courts use analogous

---

[8] Their testimony that King had assented to or ordered such conduct was objected to and sustained on hearsay grounds. *See supra* Part II(b)(3).

federal statutes, and cases interpreting them, as guidance in their reading of the TCHRA. *Mission Consol. School. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). Plaintiffs do not invoke any authority stating Texas courts have interpreted the TCHRA in a manner inconsistent with the federal law relied on by defendants. Accordingly, the reasoning of this opinion shall apply with equal force to their TCHRA claims, and defendant's motion for summary judgment as to those claims shall be **GRANTED**.

Lastly, plaintiffs ask for relief under Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981. The requirements under § 1981 and Title VII are co-extensive. As set forth above, plaintiffs have failed to raise a genuine issue of material fact with regard to each of their Title VII claims. Accordingly, defendant's motion for summary judgment as to plaintiffs' § 1981 claim shall also be **GRANTED**. Finally, Plaintiffs included in their complaint unequal pay claims, Pls.' Compl. at 11, but concede they cannot meet their prima facie burden on those claims in their response to this motion, Pls.' Resp. at 27. Summary judgment shall also be **GRANTED** as to those claims.[9]

## IV. CONCLUSION

For the foregoing reasons, in a separate order issued this date, defendant's motion for summary judgment is **GRANTED**.

Royce C. Lamberth
United States District Judge

DATE  *12/10/15*

---

[9] In their response, plaintiffs make this concession due to their purported inability to obtain unspecified discovery and deposition testimony, and that they have "prepared a motion to compel and stay pursuant to Rule 56(d)." Pls.' Resp. at 27. Plaintiffs have not filed a motion to compel, nor is their unsworn and general assertion in their response sufficient to invoke Rule 56(d). *See Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) ("[N]on-moving parties requesting rule 56(d) relief 'may not rely on vague assertions that additional discovery will produce needed, but unspecified, facts, particularly where, as here, ample time and opportunities for discovery have already lapsed.'") (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)).